UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| TYLER JORDAN OATWAY,<br><br>      Plaintiff,<br>  v.<br><br>EXPERIAN INFORMATION SOLUTIONS, INC. et al.,<br><br>      Defendants. | CASE NO. 2:24-cv-00523-LK<br><br>ORDER GRANTING MOTION TO COMPEL ARBITRATION AND DENYING AS MOOT MOTION TO STAY DISCOVERY |

  This matter comes before the Court on Defendant Experian Information Solutions, Inc.'s Motion to Compel Arbitration, Dkt. No. 30, and its Motion to Stay Discovery or for a Protective Order, Dkt. No. 34. Experian seeks to compel Plaintiff Tyler Oatway to submit this dispute to arbitration, and Oatway counters that the parties did not have a valid agreement to arbitrate. For the reasons set forth below, the Court grants the motion to compel arbitration and denies as moot the motion to stay discovery.

## I. BACKGROUND

**A.    Oatway's Credit Report Listed Him as Deceased**

In July 2023, Oatway sought to purchase a car from dealer Definitive Motors. Dkt. No. 1 at 12. Definitive Motors ran a credit check on July 31, 2023, and obtained Oatway's credit reports from the three major credit reporting agencies through reseller 700 Credit LLC. *Id.* As part of this process, Experian Information Solutions, Inc. ("Experian") sold a consumer report about Oatway to 700 Credit. *Id.* at 13. The report had "red flags" and falsely showed Oatway as "deceased." *Id.* at 13–14. Ultimately, Oatway was able to purchase a car, but he paid a higher rate of interest because of the delay in getting approved. *Id.* at 15–16. Oatway initiated this action on April 17, 2024, asserting claims under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, and contending that he suffered damages as a result of the false report. Dkt. No. 1 at 1, 16–17.

**B.    Oatway's Agreement with Experian Includes an Arbitration Provision**

Experian is a consumer credit reporting agency that provides consumer reports as defined by 15 U.S.C. § 1681a(d) and (f). *Id.* at 5. It is also an affiliate of ConsumerInfo.com, Inc., which does business as Experian Consumer Services ("ECS") and operates a credit monitoring service called CreditWorks. Dkt. No. 31 at 3. Experian "contributed to the services that CreditWorks subscribers receive by providing regular access to how information appears in their EIS credit files, including changes to their credit file information." *Id.* at 5. CreditWorks subscribers are required to provide written authorization under FCRA to obtain their credit report and/or credit score(s) on a recurring basis from Experian through CreditWorks. *Id.*

Oatway enrolled in CreditWorks on June 23, 2018. *Id.* at 3. To do so, he had to complete two webforms. The first required him to enter his personal information, including contact information. *Id.*; Dkt. No. 31-1 at 2. After he entered that data, he had to click the "Submit and Continue" button on the form to continue the enrollment process. Dkt. No. 31 at 3; Dkt. No. 31-1

ORDER GRANTING MOTION TO COMPEL ARBITRATION AND DENYING AS MOOT MOTION TO STAY DISCOVERY - 2

at 2. Once he clicked that button, he had to complete a second form and agree to terms of use and other policies to finalize his enrollment. Dkt. No. 31 at 3.

The second webform required Oatway to enter his social security number, date of birth, and a username and password. *Id.*; Dkt. No. 31-1 at 4. On the same screen was the following disclosure: "By clicking 'Submit Secure Order': I accept and agree to your Terms of Use Agreement, as well as acknowledge receipt of your Privacy Policy and Ad Targeting Policy." Dkt. No. 31-1 at 4. The phrase "Terms of Use Agreement" in the disclosure appeared in bold blue text and, if clicked, presented the user with the full text of the agreement. Dkt. No. 31-1 at 4; Dkt. No. 31 at 3–4 (explaining that the phrase "Terms of Use Agreement" in the disclosure "was a full text hyperlink to the Terms of Use. Thus, before clicking the 'Submit Secure Order' button, the consumer could view the entire text of the Terms of Use Agreement by clicking on the blue-highlighted hyperlink 'Terms of Use Agreement.'"). Below the disclosure was a large purple button that read: "Submit Secure Order." Dkt. No. 31-1 at 4. The webform, the disclosure link, and the "Submit Secure Order" button appeared on a single webpage. *Id.* Oatway would not have been able to enroll in CreditWorks unless he clicked on the "Submit Secure Order" button. Dkt. No. 31 at 4. He continuously used the service until he cancelled his membership in August 2023. *Id.*

The 2018 Terms of Use stated that the agreement "may be updated from time to time" and consumers "should check this Website regularly for updates to this Agreement." Dkt. No. 31-1 at 7. It further stated, "Each time you order, access or use any of the Services or Websites, you signify your acceptance and agreement, without limitation or qualification, to be bound by the then current Agreement." *Id.* Modifications became effective as soon as they were posted on the website. *Id.* The Terms of Use were updated in 2019 and again on July 31, 2023, *id.* at 4–5, 27, and included the same provision that continued use signifies acceptance of the current agreement, *id.* at 29, 60.

ORDER GRANTING MOTION TO COMPEL ARBITRATION AND DENYING AS MOOT MOTION TO STAY DISCOVERY - 3

All three versions of the Terms of Use in effect while Oatway was enrolled in CreditWorks contained arbitration provisions. *Id.* at 4. The arbitration provision in the 2018 Terms of Use Agreement in effect at the time Plaintiff enrolled in CreditWorks excluded "any dispute [between EIS and Oatway] arising out of [FCRA] relating to the information contained in [Oatway's] consumer disclosure or report[.]" Dkt. No. 31-1 at 9; *see also* Dkt. No. 31 at 5. However, that provision was not included in either the 2019 Terms of Use or the 2023 Terms of Use. Dkt. No. 31 at 5–6.

The 2023 Terms of Use include a section entitled "Dispute Resolution by Binding Arbitration," which provides in relevant part:

> ECS and you agree to arbitrate all disputes and claims between us that arise out of or relate to this Agreement, which includes any Information you obtain through the Services or Websites, to the maximum extent permitted by law, except any disputes or claims which under governing law are not subject to arbitration.
>
> . . .
>
> This agreement to arbitrate is intended to be broadly interpreted and to make all disputes and claims between us relating to, or arising out of, this Agreement, any Service, and/or Website, including any information you obtained through the Services or Websites, subject to arbitration to the fullest extent permitted by law. The agreement to arbitrate includes, but is not limited to, claims brought by you against ECS, whether based in contract, tort, statute (including, without limitation, the Fair Credit Reporting Act and the Credit Repair Organizations Act), for fraud, misrepresentation or any other legal theory; claims arising out of or relating to any aspect of the relationship between us arising out of any Service or Website, claims that arose before this or any prior Agreement (including, but not limited to, claims relating to advertising); . . . and claims that may arise after the termination of this Agreement.
>
> . . .
>
> The arbitration will be governed by the Commercial Dispute Resolution Procedures and the Supplementary Procedures for Consumer Related Disputes (collectively, "AAA Rules") of the American Arbitration Association ("AAA"), as modified by this Agreement, and will be administered by the AAA.
>
> . . .
>
> All issues are for the arbitrator to decide, including, but not limited to, (i) all issues

regarding arbitrability, (ii) the scope and enforceability of this arbitration provision as well as the Agreement's other terms and conditions . . . .

Dkt. No. 31-1 at 30–32 (2023 Terms of Use Agreement); *see also id.* at 62–63 (2019 Terms of Use Agreement arbitration provision).[1] The arbitration provision defines "ECS" and "us" to include ECS's "affiliates[, ]including, without limitation [its] service provider, CSID," while CSID is defined as "CSIdentity Corporation, an Experian company[.]" Dkt. No. 31-1 at 27, 31, 60, 62. "Service" includes, among other things, "the provision of any of [ECS's] products and services, including credit report(s), credit risk score(s), credit monitoring, credit score monitoring and credit score tracking (including all the data and information contained therein)[.]" *Id.* at 27, 59. "Websites" include Experian.com, affiliated websites, and mobile applications. *Id.*

## II.  DISCUSSION

### A.  Legal Standards

Under the Federal Arbitration Act ("FAA"), courts must enforce a commercial agreement to "arbitrat[e] a controversy thereafter arising out of such contract[.]" 9 U.S.C. § 2. "A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition" the district court for "an order directing that such arbitration proceed in the manner provided for in such agreement." *Id.* § 4.

When deciding whether to compel arbitration, a court must generally "determine two 'gateway' issues: (1) whether there is an agreement to arbitrate between the parties; and (2) whether the agreement covers the dispute." *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015) (citing *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002)); *accord Revitch v. DIRECTV, LLC*, 977 F.3d 713, 716 (9th Cir. 2020). Even if the agreement includes a delegation

---

[1] The 2018 Terms of Use Agreement was in effect when Oatway enrolled in CreditWorks, while the 2023 Terms of Use Agreement was in effect when he cancelled his subscription and filed suit. Dkt. No. 31 at 4. Given that Experian revised its Terms of Use on the same day it provided the credit report at issue, it is unclear whether the 2019 or 2023 Terms of Use were in effect at that time. Regardless, their relevant provisions are materially the same.

ORDER GRANTING MOTION TO COMPEL ARBITRATION AND DENYING AS MOOT MOTION TO STAY DISCOVERY - 5

clause, a court still "must resolve any challenge that an agreement to arbitrate was never formed[.]" *Caremark, LLC v. Chickasaw Nation*, 43 F.4th 1021, 1030 (9th Cir. 2022).

The FAA "reflects the fundamental principle that arbitration is a matter of contract." *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 67 (2010). For that reason, the FAA "does not require parties to arbitrate when they have not agreed to do so." *Volt Info. Scis. Inc. v. Bd. of Trs. of the Leland Stanford Jr. Univ.*, 489 U.S. 468, 478 (1989).

The party seeking to compel arbitration "must prove the existence of a valid agreement by a preponderance of the evidence." *Wilson v. Huuuge, Inc.*, 944 F.3d 1212, 1219 (9th Cir. 2019). Courts may consider evidence outside the pleadings and apply "a standard similar to that applicable for a motion for summary judgment." *Scott-Ortiz v. CBRE Inc.*, 501 F. Supp. 3d 717, 721 (D. Ariz. 2020) (quoting *Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003)); *S.S. ex rel. Stern v. Peloton Interactive, Inc.*, 566 F. Supp. 3d 1019, 1044 (S.D. Cal. 2021). Despite a party's objection that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence, the Court will consider the substance of evidence so long as it may be admissible in another form at trial. Fed. R. Civ. P. 56(c)(2); *see also, e.g.*, *Harlow v. Chaffey Cmty. Coll. Dist.*, No. 21-55349, 2022 WL 4077103, at *1 (9th Cir. Sept. 6, 2022); *Mitchell v. Ecolab, Inc.*, No. 1:22-CV-01088-EPG, 2023 WL 2666391, at *4 (E.D. Cal. Mar. 28, 2023).

**B.    There Is a Valid Agreement to Arbitrate**

Oatway does not dispute that Experian is an affiliate of ECS with the right to enforce the arbitration provision, that the agreement delegates the issue of arbitrability to the arbitrator, or that he has continually used CreditWorks' services such that later modifications to the Terms of Use are effective (if there was mutual assent to the original terms). *See generally* Dkt. No. 45. As courts have held in other similar cases, Experian is a party to the arbitration provision and can thus enforce

it. *Meeks v. Experian Info. Servs., Inc.*, Nos. 21-17023, 22-15028, 2022 WL 17958634, at *2 (9th Cir. Dec. 27, 2022); *Morgan v. Experian Info. Sols., Inc.*, No. 21-CV-5783, 2022 WL 681359, at *1 (W.D. Wash. Mar. 4, 2022) ("It is undisputed that the [2019 Terms of Use] applies to ECS affiliates and Plaintiff offers no cogent argument why [Experian] should not be considered one."). Moreover, the agreement delegates "all issues" to an arbitrator and incorporates AAA rules, so any dispute as to the arbitrability of Oatway's claims is for the arbitrator to resolve. Dkt. No. 31-1 at 9, 31–32; *see, e.g.*, *Henry Schein, Inc. v. Archer and White Sales, Inc.*, 586 U.S. 63, 67–68 (2019); *Brennan*, 796 F.3d at 1130; *Stephens v. Experian Info. Sols., Inc.*, 614 F. Supp. 3d 735, 742 (D. Haw. 2022). Thus, the issue before the Court is whether there is a valid agreement to arbitrate. *See, e.g.*, *Brennan*, 796 F.3d at 1130.

Experian argues that a valid agreement to arbitrate exists because Oatway had notice of, and affirmatively agreed to, the terms when he enrolled in CreditWorks. Dkt. No. 30 at 8. Oatway counters that there is no evidence that there was mutual assent to form an agreement because Experian's supporting declaration from Dan Smith is inadmissible, and Oatway never saw the arbitration provision. Dkt. No. 45 at 8–10.

1. The Smith Declaration Is Admissible

Under Federal Rule of Civil Procedure 56(c)(4), "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." "Evidence to prove personal knowledge may consist of the witness's own testimony," Fed. R. Evid. 602, and "may be inferred from a declarant's position," *In re Kaypro*, 218 F.3d 1070, 1075 (9th Cir. 2000). Moreover, "the requirement of personal knowledge imposes only a 'minimal' burden on a witness[.]" *Strong v. Valdez Fine Foods*, 724 F.3d 1042, 1045 (9th Cir. 2013).

Smith is the Director of Product Operations at ConsumerInfo.com, Inc., which does

business as Experian Consumer Services. Dkt. No. 31 at 2. He has held that role since 2010, and his duties include "supporting the consumer enrollment process into CreditWorks and related services." *Id.* His duties require him to be "familiar with ECS's electronic databases that store consumer enrollment information, including the webpages a consumer would have encountered to complete their enrollment into CreditWorks," how consumers enroll, the "buttons the consumer would have clicked on in the enrollment process," and the Terms of Use governing these services. *Id.* He states that his declaration is based on personal knowledge and a review of Experian's business records, including "membership enrollment data created and maintained in the regular course of business, including data specific to Plaintiff's account[.]" *Id.* at 2–3. Smith also signed his declaration under penalty of perjury, as required by 28 U.S.C. § 1746. *Id.* at 6.

Oatway contends that Smith did not identify the documents he relied on, but Smith properly attached and authenticated the webforms and Terms of Use. Fed. R. Evid. 901(b)(1); Dkt. No. 31 at 3–5; Dkt. No. 31-1. Although Oatway complains that Smith and was not present when he signed up for CreditWorks and cannot know what he saw on the website, Dkt. No. 45 at 11, "personal knowledge can come from the review of the contents of business records," *Banga v. First USA, NA*, 29 F. Supp. 3d 1270, 1274 n.2 (N.D. Cal. 2014). Furthermore, Oatway's contention that Smith should have attached Oatway's specific membership enrollment data and cannot validate what Oatway saw on an unknown device when he enrolled "imposes a far greater burden for personal knowledge than what is required." *Williams v. Experian Info. Sols. Inc.*, No. CV-23-01076-PHX-DWL, 2024 WL 3876171, at *9 (D. Ariz. Aug. 20, 2024). As in *Williams*, "Smith's job title and description of his duties are sufficient to establish his personal knowledge of the steps a customer must take (and the webpages a customer must encounter) when signing up for a CreditWorks account." *Id.* at *8; *see also McGuire v. CarMax Bus. Servs. LLC*, No. 1:23-CV-02938-NYW-SBP, 2024 WL 3897073, at *15 (D. Colo. Aug. 16, 2024) (Mr. Smith's review of the enrollment

data "is sufficient to show that he is qualified to offer his declaration and to meet the conditions under Federal Rule of Evidence 803(6)(A)-(D)"), *report and recommendation adopted,* 2024 WL 4027964 (D. Colo. Sept. 3, 2024).

Oatway relies on *Austin v. Equifax Information Services, LLC*, No. 3:22-cv-707, 2023 WL 8646275 (E.D. Va. Dec. 14, 2023), to support his position that Smith's declaration lacks personal knowledge. Dkt. No. 45 at 14–15. But in *Austin*, the court concluded that a different declarant's "job description was too ambiguous to present a finding that [he] had personal knowledge of the averments in [his] Affidavit." 2023 WL 8646275, at *4. That is not the case here, where Smith provided a detailed description of his job duties. Dkt. No. 31 at 2; *see also Williams*, 2024 WL 3876171, at *9 (contrasting the declarations). In addition, courts in this circuit have declined to follow *Austin*. *See, e.g.*, *Driskill v. Experian Info. Sols., Inc.*, No. 24-cv-00583-AMO, 2024 WL 4453292, at *6 (N.D. Cal. Oct. 8, 2024) (relying on the Smith declaration and noting that "*Austin* is irreconcilable with *Meeks* and every other case in this Circuit that has evaluated the enrollment process into CreditWorks"); *Scribner v. Trans Union LLC*, No. 2:23-cv-02722-JAM-CKD, 2024 WL 3274838, at *3 (E.D. Cal. July 2, 2024) ("Plaintiff's reliance on *Austin*[], an unpublished decision from the Eastern District of Virginia that is currently on appeal, is unavailing.").[2] Smith's declaration is therefore sufficient to show that he has personal knowledge of the enrollment process and Oatway's enrollment based on his job duties and his review of Experian's business records. *Williams*, 2024 WL 3876171, at *8–9; *Myers v. Experian Info. Sols. Inc.*, No. CV-23-01901-PHX-DJH, 2024 WL 2278398, at *3 (D. Ariz. May 20, 2024) (finding the Smith declaration admissible); *Scribner*, 2024 WL 3274838, at *3 (same).

---

[2] The two other out-of-circuit cases on which Oatway relies are also distinguishable decisions that go against the weight of authority in this circuit. Dkt. No. 45 at 17 (citing *Newton v. Experian Info. Sols., Inc*., No. CV 623-059, 2024 WL 3451895 (S.D. Ga. July 18, 2024), and *Lamonaco v. Experian Info. Sols., Inc.*, No. 6:23-cv-1326-PGB-LHP, 2024 WL 1703112 (M.D. Fla. Apr. 19, 2024)). Both cases are currently on appeal. *See* Case Nos. 24-12398, 24-11270 (11th Cir. 2024).

## 2. Oatway Agreed to the Terms of Use and Arbitration Provision

Oatway argues that even if the Smith declaration is considered, there is insufficient evidence that he assented to the "clickwrap" arbitration agreement. Dkt. No. 45 at 19–20.

To determine whether a valid agreement to arbitrate exists, "federal courts 'apply ordinary state-law principles that govern the formation of contracts.'" *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175 (9th Cir. 2014) (quoting *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). Here, the Terms of Use do not include a choice of law provision, and the parties agree that Washington law applies. *See First Options of Chi., Inc.*, 514 U.S. at 944; Dkt. No. 30 at 11; Dkt. No. 45 at 20.

"[T]raditional principles of contract still apply" to online commerce, *Wilson*, 944 F.3d at 1219, and mutual assent is required to form a contract, *Keystone Land & Dev. Co. v. Xerox Corp.*, 94 P.3d 945, 949 (Wash. 2004); *see also Nguyen*, 763 F.3d at 1175 ("[M]utual manifestation of assent, whether by written or spoken word or by conduct, is the touchstone of contract."). "Washington follows the objective manifestation theory of contract, which 'lays stress on the outward manifestation of assent made by each party to the other.'" *Reichert v. Rapid Invs., Inc.*, 56 F.4th 1220, 1227 (9th Cir. 2022) (quoting *City of Everett v. Sumstad's Est.*, 631 P.2d 366, 367 (Wash. 1981)).

"Clickwrap agreements require users to affirmatively assent to the terms of use before they can access the website and its services." *Wilson*, 944 F.3d at 1220; *see also Driskill*, 2024 WL 4453292, at *3 ("The Terms of Use Agreement is thus most like a 'modified clickwrap agreement' or 'sign-in wrap' because the CreditWorks sign up screen informs users that if they click a button (the 'Sign Up' button), they agree to the Terms of Use."). "In the context of online agreements, the existence of mutual assent turns on whether the consumer had reasonable notice of the terms of service agreement." *Wilson*, 944 F.3d at 1219. In the absence of a consumer's actual knowledge

of the agreement, "an enforceable contract will be found based on an inquiry notice theory only if: (1) the website provides reasonably conspicuous notice of the terms to which the consumer will be bound; and (2) the consumer takes some action, such as clicking a button or checking a box, that unambiguously manifests his or her assent to those terms." *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 856 (9th Cir. 2022).

To establish the first issue, Experian must show that notice of the terms was "displayed in a font size and format such that the court can fairly assume that a reasonably prudent Internet user would have seen it." *Id.* at 856. Courts look to "the conspicuousness and placement of the 'Terms of Use' hyperlink, other notices given to users of the terms of use, and the website's general design" in determining "whether a reasonably prudent user would have [had] inquiry notice[.]" *Nguyen*, 763 F.3d at 1177. Oatway argues that "nothing **required** the consumer to first click on the box containing the arbitration agreement, nor to scroll down to view the complete contents of the same, nor did the sign-up process call the consumer's attention to any arbitration agreement." Dkt. No. 45 at 21. However, the terms were reasonably conspicuous. The sign up form stated that the user was accepting and agreeing to the Terms of Use Agreement by clicking "Submit Secure Order," the link to the Terms of Use Agreement was set off in bright blue font, and the link took users to the full text of the Terms of Use. Dkt. No. 31 at 3; Dkt. No. 31-1 at 4. Accordingly, "a reasonable Internet user would have seen the notice and would have been able to locate the Terms of Use Agreement via the hyperlink." *Myers*, 2024 WL 2278398, at *4; *see also Scribner*, 2024 WL 3274838, at *4–5; *Saucedo v. Experian Info. Sols.*, No. 1:22-cv-01584-ADA-HBK, 2023 WL 4708015, at *5 (E.D. Cal. July 24, 2023).

Oatway argues that Experian's website was misleading, relying on *Sgouros v. TransUnion Corp.* in support, Dkt. No. 45 at 21, but that case involved Trans Union, LLC, not Experian, and a different enrollment process, 817 F.3d 1029, 1030–33 (7th Cir. 2016). Notably, the Seventh Circuit

ORDER GRANTING MOTION TO COMPEL ARBITRATION AND DENYING AS MOOT MOTION TO STAY DISCOVERY - 11

1  has upheld the validity of an enrollment process similar to CreditWorks. *See Domer v. Menard,*

2  *Inc.*, 116 F.4th 686, 692, 699–700 (7th Cir. 2024). Here, the Court finds that the website provided

3  reasonably conspicuous notice of the terms to which Oatway would be bound.

4        To establish the second factor, Experian must show that Oatway was "explicitly advised

5  that the act of clicking will constitute assent to the terms and conditions of an agreement" and

6  manifested his assent by clicking on the button. *Berman*, 30 F.4th at 857. The website provided

7  sufficient notice that by clicking on the sign up button, the user was accepting and agreeing to the

8  Terms of Use. Dkt. No. 31 at 2–4; *Driskill*, 2024 WL 4453292, at *4 (finding that "the CreditWorks

9  sign up screen makes the assent-manifesting actions—creating an account and acceptance of the

10 Terms of Use—clear, and clicking the 'Create Your Account' button is the way to complete that

11 action."); *Scribner*, 2024 WL 3274838, at *5 (same); *Saucedo*, 2023 WL 4708015, at *5 (same);

12 *Ferrell v. AppFolio, Inc.*, No. 8:23-cv-01353-JWH, DFM, 2024 WL 158103, at *3 (C.D. Cal. Jan.

13 11, 2024) (finding that through the CreditWorks enrollment process, plaintiff "entered into a valid

14 agreement to arbitrate with Experian"). And notably, Oatway does not contest Smith's averments

15 that in order to create his account, he had to click the "Submit Secure Order" button on the webpage

16 located immediately below the admonition that, by doing so, he was agreeing to the Terms of Use.

17 Dkt. No. 45-2; Dkt. No. 31-1 at 4. Oatway manifested consent when he clicked on the button and

18 enrolled in CreditWorks. Dkt. No. 31 at 4; Dkt. No. 31-1 at 4; Dkt. No. 45-2 at 2–3 (acknowledging

19 that he enrolled in CreditWorks).

20       Oatway argues that he did not have reasonable notice of the Terms of Use because he "did

21 not see an arbitration agreement, or any mention of an arbitration agreement, when [he] signed up

22 for [his] online Experian account" and "did not click anything that [he] recall[s] indicating that

23 [he] would be waiving [his] right to a jury." Dkt. No. 45-2 at 2–3; *see also* Dkt. No. 45 at 20–21.

24 Oatway's assertions that he did not see the arbitration agreement or recall that he waived his right

ORDER GRANTING MOTION TO COMPEL ARBITRATION AND DENYING AS MOOT MOTION TO STAY DISCOVERY - 12

to a jury do not create an issue of fact regarding his assent. *Driskill*, 2024 WL 4453292, at *5 (finding that no issue of fact was created because the user clicked through to create an account); *Stephens*, 614 F. Supp. at 744 ("A failure to read the terms of an agreement does not nullify those terms if the customer had a legitimate opportunity to read the terms."). Because Oatway had inquiry notice of the Terms of Use, whether he actually read them before manifesting his assent is not dispositive. *Scribner*, 2024 WL 3274838, at *5; *see also 1000 Va. Ltd. P'ship v. Vertecs Corp.*, 146 P.3d 423, 431 (Wash. 2006) ("A person who has notice of facts that are sufficient to put him or her upon inquiry notice is deemed to have notice of all facts that reasonable inquiry would disclose."); *M.A. Mortenson Co., Inc. v. Timberline Software Corp.*, 998 P.2d 305, 313 (Wash. 2000) (en banc) ("[I]t was not necessary for [plaintiff] to actually read the agreement in order to be bound by it."). The Court concludes that Oatway and Experian have a valid agreement to arbitrate.

Relying on *Young v. Experian Info. Sols., Inc.*, No. 23-3312 (MAS)(RLS), 2023 WL 7002338 (D.N.J. Oct. 23, 2023), Oatway alternatively requests that the Court deny Experian's motion without prejudice and direct the parties to conduct discovery. Dkt. No. 45 at 18–19. However, the district court's decision in *Young* was reversed by the Third Circuit Court of Appeals, which held that ordering discovery is improper where, as here, there is no valid dispute as to contract formation. *Young v. Experian Info. Sols., Inc.*, 119 F.4th 314, 322 (3rd Cir. 2024) ("The Court should therefore have granted [Experian's] motion to compel arbitration without discovery, in keeping with the FAA's instruction to order arbitration if 'satisfied that the making of the agreement for arbitration . . . is not in issue.'"). Here, there is no genuine issue of fact regarding the formation of the agreement, so discovery is unwarranted. *Id.*; *see also Driskill*, 2024 WL 4453292, at *7. The Court thus denies Oatway's request for discovery and grants Experian's motion to compel arbitration.

ORDER GRANTING MOTION TO COMPEL ARBITRATION AND DENYING AS MOOT MOTION TO STAY DISCOVERY - 13

**C.   The Case is Stayed as to Experian Pending Completion of Arbitration**

Experian requests that the Court stay further litigation of this case pending resolution of arbitration. Dkt. No. 30 at 13. Section 3 of the FAA provides that the Court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration." 9 U.S.C. § 3. Oatway does not address Experian's stay request in his opposition to Experian's motion to compel arbitration. *See generally* Dkt. No. 45. The Court stays this action as to Experian pending arbitration proceedings. *Smith v. Spizzirri*, 601 U.S. 472, 478 (2024) ("When a district court finds that a lawsuit involves an arbitrable dispute, and a party requests a stay pending arbitration, § 3 of the FAA compels the court to stay the proceeding."). Because the Court compels arbitration and otherwise stays this matter as to Experian, the Court denies Experian's motion to stay discovery as moot.

### III.   CONCLUSION

For the foregoing reasons, the Court ORDERS the following:

1. Experian's motion to compel arbitration, Dkt. No. 30, is GRANTED;
2. Experian's motion for a stay of discovery and for a protective order pending resolution of its motion to compel arbitration, Dkt. No. 34, is DENIED as moot;
3. This case is STAYED as to Experian only pending the completion of the arbitration proceedings; and
4. Oatway and Experian shall file a joint status report notifying the Court within seven days of the conclusion of the arbitration.

Dated this 25th day of November, 2024.

Lauren King
United States District Judge