UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| TYLER JORDAN OATWAY, | CASE NO. 2:24-cv-00523-LK |
| Plaintiff, | ORDER GRANTING IN PART |
| v. | MOTIONS FOR SUMMARY |
| | JUDGMENT AND MOTION TO |
| EXPERIAN INFORMATION | EXCLUDE; GRANTING MOTION |
| SOLUTIONS, INC. et al., | TO SEAL |
| Defendants. | |

This matter comes before the Court on the parties' cross motions for summary judgment. Dkt. Nos. 79, 82. Defendant 700Credit LLC has also filed a Motion to Exclude Plaintiff's Expert, Dkt. No. 78, and a Motion to Seal, Dkt. No. 85. For the reasons set forth below, the Court grants in part and denies in part both motions for summary judgment, grants in part and denies in part the motion to exclude, and grants the motion to seal.

## I.    BACKGROUND

This matter arises out of Plaintiff Tyler Oatway's July 2023 ill-fated attempt to purchase a car from used car dealer Definitive Motors. Dkt. No. 59 at 12. Definitive Motors obtained

Oatway's credit reports from the three major credit reporting agencies ("CRAs") through Defendant 700Credit, LLC, which is a reseller of consumer information. *Id.* According to Oatway, 700Credit and Experian Information Solutions, Inc. ("Experian") falsely reported him as "deceased," and Oatway was unable to purchase the vehicle. *Id.* at 13.

Oatway filed suit under the Fair Credit Reporting Act ("FCRA"). Dkt. No. 1. He claims that 700Credit (1) violated its duties under 15 U.S.C. § 1681e(b) when it published a report about him without following reasonable procedures to assure maximum possible accuracy, and (2) violated its duties under 15 U.S.C. § 1681i(a) when it failed to investigate his dispute and correct its false reporting. Dkt. No. 59 at 18–21.

## A.    700Credit Provides a Red Flag Product to Car Dealerships

Defendant 700Credit provides products and services to car dealerships related to credit checks. Dkt. No. 87 at 3–5. Two of its products are relevant here: it resells credit reports from the major CRAs, and it sells its own "Identity Verification" product, which is designed to identify "suspicious information" and red flags. *Id.* at 4, 127.

"[T]he purpose of th[e] red flag product is to confirm the identity of the person applying [to buy a car] is who they say they are"—to help prevent identity theft. Dkt. No. 87 at 59. The product thus helps car dealerships "fulfill[] their red flag obligations" under federal law. *Id.*; *see also* Pub. L. No. 108-159, 177 Stat. 1952 (the Fair and Accurate Credit Transactions Act, which amended the FCRA and was enacted to "prevent identity theft"); *see also* 16 C.F.R. § 681.1 *et seq.*

To help fulfill its red flag obligations, Definitive Motors entered into a contract with 700Credit. Dkt. No. 87 at 266–272. Pursuant to that agreement, Definitive Motors "agree[d] to request Red Flag services reports solely for [its] own internal business usage and solely to facilitate [its] compliance with the federal 'Red Flag' regulations." *Id.* at 271. Definitive Motors "acknowledge[d] that the Red Flag service is based on information that was not collected, in whole

or in part, for the purpose of serving as a factor in establishing a consumer's eligibility for credit or insurance or any other purpose authorized under the federal Fair Credit Reporting Act, 15 U.S.C. 1681 et seq., as amended." *Id.* Definitive Motors thus "agree[d] not to use any such information as part of its decision-making process for determining the consumer's eligibility for any credit products or other products or services (or the setting of credit terms or pricing for any such products or services)." *Id.*

700Credit and Experian had a reseller services agreement under which Experian provided authentication and "Precise ID" services to 700Credit. Dkt. No. 83-1 at 250–58. The Precise ID service compares "consumer identifying information" supplied by 700Credit and its customers "against identifying information contained in multiple Experian databases[.]" *Id.* at 250. As part of the identity verification process, a consumer's social security number ("SSN") is searched across these databases first, Dkt. No. 87 at 80, and then searched in the Social Security Administration's master death file, *id.* at 60–61.

**B.    Oatway Was Unable to Purchase a Vehicle from Definitive Motors**

On July 31, 2023, Oatway visited Definitive Motors to purchase a vehicle. Dkt. No. 79-1 at 30.[1] Definitive Motors does not provide in-house financing; financing is provided by third-party lenders. Dkt. No. 63-3 at 83. Oatway worked with Definitive Motors' financing manager, Patricio Quinones, to complete and submit a loan application to finance the purchase. *Id.* at 8, 11, 19.

Quinones collected Oatway's personal identifying information, including his SSN, and submitted his financing application to several credit unions through the "CUDL" portal. *Id.* at 19–

---

[1] Oatway has not attached his exhibits to a declaration sworn under penalty of perjury attesting to their authenticity. *See* 28 U.S.C. § 1746(2); *see also, e.g.*, Dkt. No. 79-1–79-9. Without an accompanying declaration, the documents attached to the motion are not properly authenticated. However, courts must consider unauthenticated evidence at summary judgment "if the evidence can 'be presented in a *form* that would be admissible' at trial." *Harlow v. Chaffey Cmty. Coll. Dist.*, No. 21-55349, 2022 WL 4077103, at *1 (9th Cir. Sept. 6, 2022) (quoting Fed. R. Civ. P. 56(c)(2)). Although Oatway's exhibits are not properly authenticated now, they could be authenticated and presented in admissible form at trial. Therefore, the Court considers the exhibits.

21. CUDL is an online platform that links dealerships to credit union automobile lenders; dealerships can also access 700Credit's consumer information through the "Check Credit" tab in CUDL. *Id.*; *see also* Dkt. No. 79-2 at 2 (annotated CUDL Portal screenshot). In addition to using CUDL to link with potential lenders, Quinones submitted Oatway's information through the portal because he, like all Definitive Motors employees, was responsible for complying with federal red flag laws to protect against identity theft. Dkt. No. 63-3 at 70–72.

As part of their approval process, the credit unions obtained their own credit reports. Dkt. No. 63-1 at 158. The credit unions denied Oatway's credit applications because his debt-to-income ratio was too high. Dkt. No. 63-3 at 59 (explaining that the reason for the declines was "Income insufficient for amount of credit requested, excessive obligations in relation to income"); *see also* Dkt. No. 79-1 at 40 (BECU informed Oatway that it was denying him a loan because his "debt to income was too high"); *id.* at 56–57, 61–62, 64–65 (additional lenders declined the loan for the same reason). The potential lenders were not notified of a red flag or any issue with Oatway's SSN. Dkt. No. 63-3 at 31 (explaining that "on all the declines there was no issue with social security number given. There was only declines due to DTI, or debt to income."); *see also id.* at 62–63, 75, 88–89.

## C.    700Credit's Red Flag Report Showed Oatway as Deceased

When Quinones received notice of the lenders' declinations, he clicked through the CUDL system to check Oatway's credit for the first time. Dkt. No. 63-3 at 27–28, 92. Clicking on "Check Credit" within CUDL revealed information supplied by 700Credit. *Id.* at 27–28. Specifically, 700Credit provided reports based on information it received from each of the national CRAs— Experian, Equifax, and TransUnion—and included its own Identity Verification section in each report. *Id.* at 48–49; Dkt. No. 87 at 56–58. The report that should have had Experian's credit report instead included the notation, "No record found." Dkt. No. 87 at 575; *see also id.* at 57 (Experian

returned no credit reporting data). The report also included 700Credit's Identity Verification section on the first page, showing that based on information from Experian's Precise ID product—using an incorrect SSN—Oatway was deceased. Dkt. No. 63-3 at 30; *see also* Dkt. No. 87 at 573–575 (the "Red Flag Report"); Dkt. No. 87 at 57–58.[2] According to 700Credit, "the Social Security number that was provided [by the dealership] is used to search the Experian database, and it came back with somebody else's name and address" who was "a deceased individual." Dkt. No. 87 at 61–62. The incorrect SSN also resulted in a "hit" from the Death Master File. *Id.* at 116. The red flag report showed a "Red Flag Score of "9001: Deceased" based on the incorrect SSN. Dkt. No. 79-6 at 2.

At that point, Quinones "put a pause on everything" and decided not to "release the vehicle" to Oatway. Dkt. No. 63-3 at 61–62.

**D.      The Deceased Notation Was the Result of an Incorrect Social Security Number**

No one in this litigation is alleging that Oatway engaged in fraud; instead, Experian ran its check with a "misentered" SSN. Dkt. No. 63-1 at 141. The parties dispute who was responsible for this error. According to Oatway, 700Credit sent a "placeholder SSN" ending in x1234 to Experian rather than Oatway's correct social security number. Dkt. No. 79 at 6 (citing Dkt. No. 65-11 at 2); *see also* Dkt. No. 63-3 at 37–38 (Definitive Motors Rule 30(b)(6) designee stating that the dealership did not enter an incorrect SSN into CUDL). 700Credit counters that Definitive Motors input an incorrect SSN. Dkt. No. 82 at 8; *see also* Dkt. No. 87 at 116, 119 ("The information we provided was accurate based on the information that was input and provided"; an inaccurate SSN was received from Definitive Motors); *see also* Dkt. No. 63-1 at 147–48

---

[2] 700Credit provided "two separate products" to Definitive Motors: "the credit file" from the CRAs "and the identity verification," which were "two separate results." Dkt. No. 87 at 127.

(700Credit's witness testifying that 700Credit saw in CUDL an incorrect SSN for Oatway ending in x1234).

If a Definitive Motors employee had clicked on the "View Detail Report" in the Red Flag Report, it could have seen the incorrect SSN and that it was associated with two other consumers, one of whom was deceased. Dkt. No. 79 at 6; *compare* Dkt. No. 79-4 at 2 (700Credit's identity verification document), *with* Dkt. No. 87 at 573–75 (the "Red Flag Report"). However, Quinones did not know what the "View Detail Report" button was, had never opened it before learning about this case, and was never trained by 700Credit to look at the Detail Report. Dkt. No. 87 at 303–04. Consequently, Quinones only saw the deceased notations shown in the Red Flag Report and did not review the full Red Flag Report. *Id.* at 303; *see also id.* at 276, 303 (Quinones saw Exhibit 6 to his deposition, which is a one page report).

## E.    Oatway Disputed the Deceased Notation

On July 31, Definitive Motors called Oatway, told him they "ran [his] social security number and it's coming back as—with all these red flags and that [he's] deceased," and suggested that he return to the dealership. Dkt. No. 79-1 at 33. When Oatway returned, he was informed that Experian reported him as deceased. *Id.* at 42, 72–73. Definitive Motors also handed him the "first page of a credit report obtained through Defendant's 700 Credit's Identity Verification platform," which showed that "Experian was reporting Plaintiff as deceased and without credit score." Dkt. No. 59 at 13.[3]

Oatway contacted the Social Security Administration, who confirmed that their records did not show him as deceased. Dkt. No. 79-1 at 34. The same afternoon, Oatway contacted Experian,

---

[3] Oatway's amended complaint and briefing make little effort to clarify whether the "report" obtained through "700 Credit's Identity Verification platform," *id.*, was all or a portion of the Red Flag Report, and his unauthenticated exhibits do not help, Dkt. No. 79-4 at 2, Dkt. No. 79-6 at 2–4. For purposes of these motions, the Court takes Oatway at his word that 700Credit provided a "single, integrated report" that contained "purported red flag credit information." Dkt. No. 93 at 13.

ORDER GRANTING IN PART MOTIONS FOR SUMMARY JUDGMENT AND MOTION TO EXCLUDE;
GRANTING MOTION TO SEAL - 6

who confirmed that their records did not show him as deceased either. *Id.* at 37–38. Oatway also pulled up his credit report on Experian's website and saw that it was not showing him as deceased. *Id.* at 38. Experian had "no answers" for Oatway about why Definitive Motors saw a deceased notation. *Id.*

Oatway contacted Experian again on August 2, 2023, and was told again that their records did not show him as deceased. *Id.* at 124–25. On the same day, Oatway called 700Credit; he explained that the dealership had a report that showed him as deceased, but Experian was not reporting him as deceased, and he asked about the source of the red flag indicator. *Id.* at 128–33. Following their conversation, 700Credit employee Katarina Bishop emailed Plaintiff that "Experian (PreciseID) . . . returned a score of 9001, which is deceased." Dkt. No. 55-3 at 3. Ms. Bishop informed Oatway by email that she was "investigating this further with the dealership and Experian" and she would "let [him] know once [she] [ha[d] an update." *Id.* at 2.

Oatway did not hear from 700Credit again. Dkt. No. 79-1 at 167–68. 700Credit did not commence an investigation, create a case about his complaint, or include any notes in its internal system—Salesforce—about Oatway's call. Dkt. No. 63-1 at 133, 161–62. Although 700Credit has an internal process for addressing consumer disputes about its identity verification product, it did not follow that process for Oatway. *Id.* at 166, 168–69.

**F.    Procedural History**

Oatway filed suit on April 17, 2024, naming 700Credit and Experian as Defendants. Dkt. No. 1. The Court subsequently granted Experian's motion to compel arbitration, and the case is stayed as to Experian. *See* Dkt. No. 50; *see also* Dkt. No. 73 (denying Oatway's motion to lift the stay).

Oatway filed an amended complaint on May 6, 2025. Dkt. No. 59. He alleges that 700Credit falsely "reported him as deceased on his credit report," and then "Definitive Motors

1    denied [his] loan application based upon the contents of Defendant 700Credit's consumer report."

2    *Id.* at 13. Oatway also alleges that he was "not offered any loan to purchase the vehicle he needed"

3    because of 700Credit's alleged inaccurate reporting. *Id.*

4      Oatway contends that because his inability to purchase a car spanned several months, he

5    ultimately paid a higher interest rate. Dkt. No. 24-1 at 1. He estimates that the higher interest rate

6    will cost him approximately $3,100 over the life of the loan. *Id.* Oatway also contends that

7    700Credit's actions exacerbated his anxiety and depression symptoms, negatively affected his job

8    performance and personal relationships, and caused him sleeping difficulties, irritability, and

9    frequent headaches. Dkt. No. 79-1 at 113–14, 169–70. He also spent time communicating with

10   700Credit, the dealership, Experian, and the Social Security Administration trying to get his

11   records corrected. *Id.* at 115–16.

12     The parties agreed to a briefing schedule for cross-motions for summary judgment, Dkt.

13   Nos. 71–72, 88–89, and these cross-motions followed, Dkt. Nos. 79, 82. 700Credit has also moved

14   to exclude the opinions of Oatway's expert Douglas Hollon, Dkt. No. 78, and to seal its contract

15   with Experian, Dkt. No. 85.

16   ## II.    DISCUSSION

17     The FCRA was enacted "to ensure fair and accurate credit reporting, promote efficiency in

18   the banking system, and protect consumer privacy." *Tailford v. Experian Info. Sols.*, 26 F.4th 1092,

19   1095 (9th Cir. 2022) (quoting S*afeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 52 (2007)). The statute

20   "was the product of congressional concern over abuses in the credit reporting industry" and was

21   "crafted to protect consumers from the transmission of inaccurate information about them[.]"

22   *Guimond v. Trans Union Credit Info. Co.*, 45 F.3d 1329, 1333 (9th Cir. 1995). "These consumer

23   oriented objectives support a liberal construction of the FCRA." *Id.*

24

1    Oatway's motion for partial summary judgment contends that he is entitled to summary

2    judgment on both of his claims, and only the issue of damages should remain for trial. Dkt. No. 79

3    at 2. First, he argues that the undisputed facts show that 700Credit did not follow reasonable

4    procedures to assure maximum possible accuracy when it provided information about him. *Id.* at

5    15 (citing Section 1681e(b)). Second, he contends that after "he disputed the inaccurate deceased

6    reporting with 700 Credit," it "declined to investigate the dispute, as § 1681i of FCRA requires."

7    *Id.* at 3.

8    700Credit moves for summary judgment on both claims, arguing that it has no liability and

9    Oatway has no damages. Dkt. No. 82. It contends that its Red Flag Report was not a "consumer

10   report," which is a predicate for both of Oatway's claims. *Id.* at 1. It further argues that Oatway

11   cannot show that 700Credit's actions proximately caused him any actual damages, its procedures

12   and investigation were both reasonable as a matter of law, and his requested relief "violates the

13   FCRA's goals of promoting efficiency in the banking industry and protecting consumers." *Id.* at

14   2.[4] Both parties also filed combined responses and replies. Dkt. Nos. 93–94.

15   **A.    The Red Flag Report Was a Consumer Report**

16   The issue of whether the Red Flag Report was a "consumer report" under the FCRA

17   permeates both dispositive motions and the motion to exclude Hollon's report.[5] Consequently, the

18   Court addresses this issue first.

19   In its motion for summary judgment, 700 Credit argues that the Red Flag Report was not

20   a consumer report because it was not used, and was never expected to be used, to assess Oatway's

21

22   [4] 700Credit's argument about a conflict between Oatway's claims and the FCRA's goals deserves little attention. *Id.*
     at 23–25. 700Credit points to no authority indicating that the red flag rules were meant to abrogate the FCRA's specific
23   obligations to assure maximum possible accuracy in consumer reports and reinvestigate disputes. *See generally* 16
     C.F.R. § 681.1.

24   [5] As set forth below, 700Credit seeks to exclude Hollon's report, arguing that he "improperly offers a legal opinion
     that the Red Flag Summary qualifies as a 'consumer report.'" Dkt. No. 78 at 1.

1    eligibility for "credit," which means his "ability to borrow money." Dkt. No. 82 at 15 (quoting

2    Credit, Black's Law Dictionary (12th ed. 2024)). 700Credit also argues that Oatway's motion for

3    partial summary judgment does not provide any support for his position that the report was a

4    consumer report, and Oatway has thus waived that argument. *Id.* at 16.

5        Oatway robustly responded to 700Credit's argument about whether the Red Flag Report

6    was a consumer report, *see* Dkt. No. 93 at 12–15, so he did not waive this argument as 700Credit

7    contends. In response to 700Credit's motion, Oatway argues that 700Credit communicated to

8    Definitive Motors that he was deceased, which was information about his "credit standing,

9    personal characteristics, and credit capacity," and its "single, integrated report" contained

10   "purported red flag credit information." *Id.* at 13. In addition, Oatway argues that 700Credit knew

11   that the report would be used to evaluate his eligibility to purchase a vehicle, rendering it a

12   consumer report. *Id.* at 14.

13       The FCRA defines the term "consumer report" as follows:

14       The term "consumer report" means any written, oral, or other communication of
         any information by a consumer reporting agency bearing on a consumer's credit
15       worthiness, credit standing, credit capacity, character, general reputation, personal
         characteristics, or mode of living which is used or expected to be used or collected
16       in whole or in part for the purpose of serving as a factor in establishing the
         consumer's eligibility for—

17
         (A) credit or insurance to be used primarily for personal, family, or
18       household purposes;

19       (B) employment purposes; or

20       (C) any other purpose authorized under section 1681b of this title.

21   15 U.S.C. § 1681a(d)(1). Whether a report is a "consumer report" is a "threshold question of law."

22   *Runyon v. Clearstar, Inc.*, No. 24-CV-01519 (OEM) (LGD), 2025 WL 1530582, at *4 (E.D.N.Y.

23   May 29, 2025).

24

1    700Credit does not dispute that it is a CRA and it communicated information through its

2    Red Flag Report. *See generally* Dkt. Nos. 82, 94. Nor does it dispute that the Red Flag Report

3    bears on Oatway's personal characteristics—namely, whether he was alive—and his character to

4    the extent that it suggested that he was using an SSN that was not his own. *Cf. Runyon*, 2025 WL

5    1530582, at *5 (finding that defendant's report flagging that the SSN plaintiff provided was issued

6    prior to her year of birth constituted a consumer report because it "b[ore] on Plaintiff's character";

7    the notification and red flag "connote[d] that Plaintiff's SSN d[id] not actually belong to her").

8    700Credit contends, however, that the information was not used or expected to be used to extend

9    "credit." Dkt. No. 82 at 14–15; *see also* Dkt. No. 94 at 4–5 (700Credit's reply arguing that the

10   report was not used "to determine creditworthiness" and Definitive Motors "made no credit

11   decision[s] regarding" Oatway). Oatway responds that "700 Credit knew that the report it issued

12   about Plaintiff was going to be used for one of the enumerated purposes under the FCRA,

13   specifically for establishing Plaintiff's eligibility for the purchase of a car since the request came

14   from an auto dealership in connection with the sale and purchase of an automobile[.]" Dkt. No. 93

15   at 14.

16       700Credit's argument is unpersuasive because it addresses only subsection (A) of the

17   definition of a "consumer report." 700Credit ignores subsection (C) of the definition, which applies

18   when a communication "is used or expected to be used or collected in whole or in part for the

19   purpose of serving as a factor in establishing the consumer's eligibility" for "any other purpose

20   authorized under section 1681b of this title." 15 U.S.C. § 1681a(d)(1)(C). In turn, Section 1681b

21   permits CRAs to furnish consumer reports to an entity "which [the CRA] has reason to believe"

22   otherwise "has a legitimate business need for the information . . . in connection with a business

23   transaction that is initiated by the consumer." *Id.* § 1681b(a)(3)(F)(i). 700Credit has not cited any

24   cases addressing this provision or interpreting it to exclude reports like the Red Flag Report.

1    Here, 700Credit provided a Red Flag Report to Definitive Motors—whom it knew to be

2    engaged in "Auto Sales," Dkt. No. 87 at 266, indicating a "Score Risk Level" for Oatway that was

3    on the highest end of the risk spectrum, coupled with a "Red Flag Alert" that the input SSN was

4    "recorded as deceased," that there was a "[h]it to the Decease Master File," and that the Social

5    Security Administration "reports death benefits are being paid on the SSN," *id.* at 573, 575.

6    700Credit states that it provided this information to help Definitive Motors "verify Oatway's

7    identity, as required under the federal Red Flag[s] Rule, promulgated under the FCRA." Dkt. No.

8    82 at 1–2. Given this acknowledgement by 700Credit that Definitive Motors had a legitimate need

9    for the information to ensure against identity fraud in its business transactions, such information

10   clearly falls within the auspices of Subsection C by way of Section 1681b(a)(3)(F)(i).

11   700Credit's contract with Definitive Motors, in which Definitive Motors "acknowledge[d]

12   that the Red Flag service is based on information that was not collected" to "serv[e] as a factor in

13   establishing a consumer's eligibility for credit or insurance or any other purpose authorized under

14   the federal Fair Credit Reporting Act," and "agree[d] not to use any such information as part of its

15   decision-making process for determining the consumer's eligibility for any . . . products" does not

16   change this result. Dkt. No. 87 at 271. 700Credit cannot escape liability by requiring customers to

17   promise not to use its Red Flag service "for credit or insurance or any other purpose authorized

18   under the federal Fair Credit Reporting Act," *id.*, while simultaneously marketing the service as a

19   tool to help clients like Definitive Motors "verify [customers'] identit[ies], as required under the

20   federal Red Flag[s] Rule, promulgated under the FCRA," Dkt. No. 82 at 1–2. The Third Circuit

21   reached the same conclusion in similar circumstances in *Cortez v. Trans Union, LLC*, 617 F.3d

22   688 (3d Cir. 2010). That case involved a Trans Union service called OFAC Advisor, which

23   purported to help customers comply with the USA PATRIOT Act by identifying individuals who

24   were on the Treasury Department's Office of Foreign Assets Control's "Specially Designated

Nationals" list—a list of individuals, entities, and groups thought to be involved in terrorism, narcotics trafficking, or the proliferation of weapons of mass destruction. *Id.* at 696–97. United States persons and businesses are generally prohibited from dealing with those on the OFAC SDN list. *Id.* The plaintiff in *Cortez* sued Trans Union after she was prevented from purchasing a car because Trans Union sent the car dealership an OFAC Advisor Report that "confused [her] identity with the identity of someone with a similar name" who was on the list. *Id.* at 696. Trans Union argued that "the OFAC alerts were not 'used or expected to be used in establishing the consumer's eligibility for credit' because, according to its agreement with [the car dealership], the screen was to be used only for USA PATRIOT Act compliance." *Id.* at 707. Observing that "[i]t is difficult to imagine an inquiry more central to a consumer's 'eligibility' for credit than whether federal law prohibits extending credit to that consumer in the first instance," the Third Circuit was "not persuaded that Trans Union's private contractual arrangements with its clients can alter the application of federal law, absent a statutory provision allowing that rather unique result." *Id.* at 707–08; *see also Kang v. Credit Bureau Connection, Inc.*, 523 F. Supp. 3d 1174, 1183 (E.D. Cal. 2021) (reaching same result). So too here. Like the OFAC Advisor Report, the Red Flag Report involves an inquiry central to a consumer's eligibility to purchase a vehicle because it bears on whether the purchase is prohibited in the first instance by the Red Flags Rule as implemented by 700Credit's customers. *See* Dkt. No. 87 at 239 (creditors[6] such as Definitive Motors must develop and implement a "written Identity Theft Prevention Program" to prevent identity theft); *see also* 16 C.F.R. § 681.1(d)(2)(iii) (the Program must include policies and procedures to "[r]espond

---

[6] The Red Flags Rule defines "creditor" to include businesses who arrange for loans or the extension of credit, such as automobile dealers that offer financing or help consumers get financing from others. *Id.* at 237; *see also* 16 C.F.R. § 681.1(b)(3)(ii)(5) (adopting the definition from 15 U.S.C. § 1681m(e)(4), which defines "creditor" to include a person who regularly arranges for the extension of credit and "obtains or uses consumer reports, directly or indirectly, in connection with a credit transaction" or "furnishes information to consumer reporting agencies . . . in connection with a credit transaction").

ORDER GRANTING IN PART MOTIONS FOR SUMMARY JUDGMENT AND MOTION TO EXCLUDE; GRANTING MOTION TO SEAL - 13

appropriately to any Red Flags that are detected . . . to prevent and mitigate identity theft"). To find that the Red Flag Report was not a consumer report, the Court would have to impermissibly (1) "conclude that Congress did not mean what it said when it unequivocally defined 'consumer report'" and (2) ignore the requirement to read the FCRA in a liberal manner to effectuate Congress's intent to protect consumers. *Breitenbach v. SageStream, LLC*, No. 2:24-cv-00893-JDW, 2025 WL 1655317, at *3 (E.D. Pa. June 11, 2025). According, the Court finds that the Red Flag Report was a consumer report under the FCRA, and Oatway is entitled to summary judgment on this issue.

**B.    The Court Grants in Part the Motion to Exclude**

    1.    Legal Standard

Under Rule 702, a trial court may exercise discretion to allow expert testimony if the proponent "demonstrates to the court that it is more likely than not that" such testimony (1) "will help the trier of fact to understand the evidence or to determine a fact in issue;" (2) "is based on sufficient facts or data;" (3) "is the product of reliable principles and methods;" and (4) "reflects a reliable application of the principles and methods to the facts of the case." Fed. R. Evid. 702(a)–(d) (2023). The Court's role at this stage is that of "gatekeeper." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993).

"The relevancy bar is low," demanding only that the expert opinion "logically advances a material aspect of the proposing party's case." *Messick v. Novartis Pharms. Corp.*, 747 F.3d 1193, 1196 (9th Cir. 2014). Expert opinion testimony is reliable if the knowledge underlying it "has a reliable basis in the knowledge and experience of the relevant discipline." *Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.*, 738 F.3d 960, 969 (9th Cir. 2013) (citation omitted). The reliability inquiry "focuses not on what the experts say, or their qualifications, but what basis they have for saying it.'" *United States v. Holguin*, 51 F.4th 841, 854 (9th Cir. 2022) (citation modified). The

district court "may reject testimony that is wholly speculative" but should "not weigh the expert's conclusions or assume a factfinding role." *Elosu v. Middlefork Ranch Inc.*, 26 F.4th 1017, 1020 (9th Cir. 2022). Indeed, "there is no presumption in favor of admission," *Engilis v. Monsanto Co.*, No. 23-4201, 2025 WL 2315898, at *6 (9th Cir. Aug. 12, 2025), and experts relying on their experience as a basis for their opinion must still explain "how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts," *Avery v. City of Seattle*, No. 2:22-CV-00560-LK, 2024 WL 2959541, at *7 (W.D. Wash. June 12, 2024) (quoting Fed. R. Evid. 702, Advisory Committee's Notes to 2000 amendment). And although *Daubert* "may be harder to apply when the expert testimony is 'experience-based' rather than 'science-based,'" any such difficulty "cannot simply lead to a 'that goes to weight, not admissibility' default"; rather, there is "a strong argument that reliability becomes more, not less, important when the 'experience-based' expert opinion is perhaps not subject to routine testing, error rate, or peer review type analysis, like science-based expert testimony." *United States v. Valencia-Lopez*, 971 F.3d 891, 898 (9th Cir. 2020); *see also* Fed. R. Evid. 702, Advisory Committee's Notes to 2023 amendment (decisions holding "that the critical questions of the sufficiency of an expert's basis, and the application of the expert's methodology, are questions of weight and not admissibility . . . are an incorrect application of Rules 702 and 104(a)").

    2.  Background

        Douglas Hollon holds a Bachelor of Science in Business Finance. Dkt. No. 79-9 at 4. He has received FCRA certifications from the Consumer Data Industry Association, and he has earned additional certifications. *Id.* He has worked in the consumer finance reporting industry since 2005, when he began working for Experian. *Id.* at 3. His work for Experian spanned 14 years from 2005 through 2019 in the National Consumer Assistance Center—Experian's main dispute processing

center—where he helped consumers "resolve their issues" and "[p]rovid[ed] leadership advice to current supervisors." *Id.* at 3, 72. He handled "escalated credit report disputes" submitted on consumers' behalf by attorneys and government entities. *Id.* at 3. He has also received "specialized training involving fraud (identity theft) disputes" and testified on Experian's behalf as a Rule 30(b)(6) witness. *Id.* In addition to his experience at Experian, he has studied "regulatory agency publications, case law, deposition transcripts, company manuals or publications, and other related documents," contributing to his "extensive knowledge of other Consumer Reporting Agencies' (CRAs) and Data Furnishers' credit dispute operations." *Id.* at 4. Since 2020, Hollon has been the owner of Credit Experts of North Texas, LLC. *Id.* at 71. Over the course of his career, he has "assisted tens of thousands of customers." *Id.* at 4. 700Credit does not dispute his credentials.

Hollon opines that 700Credit "failed to maintain adequate procedures to ensure accuracy in its reports regarding Plaintiff." *Id.* at 5. Specifically, "the information contained in 700 Credit's consumer report to Definitive Motors contained an obvious and significant amount of contradictory information on the face of the report, which should have immediately alerted 700 Credit to its inaccuracy." *Id.* at 6. That contradictory information included that Equifax and Trans Union reported that Oatway had 35 active and open accounts, and that the owner of the x1234 SSN was a much older woman who lived in Florida or a deceased individual. *Id.* at 6, 30.

Hollon also opines that 700Credit "does not have any policies or procedures to review consumer reports with a deceased notation before sending the reports to third parties." *Id.* Instead, it resells that information "without any review or verification of the deceased information reported." *Id.* Finally, he opines that 700Credit "failed to conduct a reasonable investigation of Mr. Oatway's disputes regarding the deceased reporting" even after Oatway disputed the accuracy of the information. *Id.*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

   3.  <u>Hollon's Opinion is Excluded in Part</u>

   700Credit moves to exclude Hollon's opinions in their entirety for two reasons. Dkt. No.
78 at 1. First, it contends that Hollon "improperly offers a legal opinion that the Red Flag Summary
qualifies as a 'consumer report'—a statutory term whose interpretation is reserved for the Court."
*Id.* 700Credit further argues that Hollon's expert report should be excluded in its entirety" because
"all [his] ensuing expert opinions flow from that premise." *Id.* at 1, 4. 700Credit also states that
Hollon's opinion would not help the trier of fact because it is incorrect; the Red Flag Report was
not a consumer report. *Id.* at 6. Second, 700Credit avers that Oatway "failed to make [Hollon]
available for a deposition after 700Credit timely noted his deposition to occur before the discovery
cutoff." *Id.* at 1.

   Oatway responds that Hollon's opinion that the report was a "consumer report" is a
background "foundational" statement rather than a specific opinion. Dkt. No. 84 at 9. He states
that the thrust of Hollon's opinion is that 700Credit failed to follow "reasonable procedures when
it included a deceased notation in its report about Plaintiff and when it investigated Plaintiff's
dispute of that reporting." *Id.* at 4; *see also id.* at 8 (Hollon's characterization of the "Identity
Verification" document as a "consumer report" is permissible because it "lays the foundation for
his opinions" about the reasonableness of 700Credit's reporting procedures and "is not meant to
instruct the jury about the law").

   Hollon quotes the statutory definition of a consumer report and opines that "[t]here is no
question" that the Red Flag Report is a "consumer report." Dkt. No. 79-9 at 22. Because the
characterization of the Red Flag Report as a consumer report is a legal issue as set forth above, the
Court excludes Hollon's opinion on that issue. *See, e.g.*, *Nationwide Transp. Fin. v. Cass Info.
Sys., Inc.*, 523 F.3d 1051, 1058 (9th Cir. 2008) ("[A]n expert witness cannot give an opinion as to
[their] *legal conclusion*, i.e., an opinion on an ultimate issue of law."). However, because the Court

has found that the Red Flag Report is a consumer report, it does not exclude his opinions as unreliable solely because they flow from that conclusion.

The Court also excludes as a legal conclusion Hollon's opinion that 700Credit is legally responsible "for the data they report" and does not fulfill its legal obligation by simply forwarding what it receives from another CRA. Dkt. No. 79-9 at 44–45.

Turning to 700Credit's request that Hollon be excluded as a discovery sanction, the Court finds that 700Credit is not entitled to such relief. 700Credit relies only on Federal Rule of Civil Procedure 37(d)(1)(A)(i) in support of its request, Dkt. No. 78 at 4, but as the language it quotes makes clear, that rule applies only when "a party or a party's officer, director, or managing agent . . . fails . . . to appear for that person's deposition." Hollon is not a party or other listed person, so this section is inapplicable. *See M.H. v. City of San Bernardino*, No. EDCV 20-242-JGB (KKx), 2020 WL 7247341, at *9 n.3 (C.D. Cal. Nov. 10, 2020) ("Rule 37(d) . . . only applies where a party fails to appear at his deposition."); *see also Eno v. Forest River Inc.*, No. 2:20-CV-706-DWC, 2021 WL 6428634, at *2 (W.D. Wash. Aug. 19, 2021) (declining to exclude an expert under Rule 37(d)(1)(A)(i) because the expert was not a party or "an officer, director, or managing agent of Defendant"); *S.H. ex rel. Holt v. U.S.*, No. CIV. S-11-1963 LKK DAD, 2013 WL 6086775, at *5 (E.D. Cal. Nov. 19, 2013) (explaining that Rule 37(d) "addresses the failure to appear for depositions of the party itself, and has nothing to do with expert depositions").

Even if 700Credit had relied on an applicable rule—which it did not—it would not be entitled to exclusion. True enough, Rule 26(b) requires parties to make their experts available for deposition. *S.H. ex rel. Holt*, 2013 WL 6086775, at *5. However, "the Rule 37(c)(1) sanction" of exclusion "is not triggered by a violation of Rule 26(b)." *Id.* The remedy available for "any unjustified failure" to comply with Rule 26(b) is an order to compel, and then, if the opposing party fails to comply with a resulting order, it can move for sanctions. *Id.* 700Credit did not follow

1    this path. Instead, it sought Hollon's deposition late in the discovery period (on May 6, noting a

2    May 13 deposition when the discovery period ended on May 19, 2025). Dkt. No. 23 at 2; Dkt. No.

3    76-1 at 48–49; Dkt. No. 78 at 3. 700Credit received Hollon's report on March 28, 2025, Dkt. No.

4    76-1 at 48, and it does explain why it waited until the eve of the discovery deadline to seek his

5    deposition. Had it sought a deposition earlier, "rather than sitting on its hands[,] . . . it could have

6    sought a court order compelling the deposition." *S.H. ex rel. Holt*, 2013 WL 6086775, at *5. In

7    addition, there is no evidence to suggest that 700Credit tried to find a mutually agreeable date

8    before it issued the notice of deposition, and then when scheduling fell through, 700Credit did not

9    attempt any less extreme remedial measure like moving to compel or for an extension of the

10   discovery deadline. Even now, 700Credit does not contend that it has been prejudiced or seek to

11   take Hollon's deposition late as alternative relief. Consequently, even if Rule 37(c)(1) were

12   applicable here, the "harsh sanction" of exclusion is not warranted. *Sonneveldt v. Mazda Motor of*

13   *Am., Inc.*, No. 8:19-cv-01298-JLS-KES, 2022 WL 4596648, at *2 (C.D. Cal. Sep. 19, 2022)

14   (declining to strike expert's report under Rule 37); *Castro v. KFC Corp.*, No. 6:19-CV-1898-

15   WWB-LRH, 2021 WL 4264865, at *1 (M.D. Fla. Aug. 30, 2021) ("This Court will not allow a

16   party to seek the wholesale exclusion of a witness when much of the prejudice has been self-

17   inflicted by failing to timely seek the assistance of the Court.").

18        Although 700Credit did not make any other arguments about the admissibility of Hollon's

19   report, the Court considers that issue in its role as gatekeeper. Fed. R. Evid. 702(c); *see also Engilis*

20   *v. Monsanto Co.*, No. 23-4201, 2025 WL 2315898, at *6–7 (9th Cir. Aug. 12, 2025) (a proponent

21   of expert testimony must always "demonstrate each of the requirements of Rule 702 by a

22   preponderance of the evidence," and the court "cannot abdicate its role as gatekeeper, nor delegate

23   that role to the jury" (citation modified)). The Court finds that Oatway has not met his burden

24   under Rule 702 with respect to much of Hollon's proposed testimony.

First, much of Hollon's report is commentary on other evidence in the record, *see, e.g.*, Dkt. No. 79-9 at 5–6, 22, but the role of an expert is not to "simply comment on all the evidence," *Paatalo v. J.P. Morgan Chase Bank*, No. CV 10-119-BLG-CSO, 2012 WL 12887697, at *3 (D. Mont. May 31, 2012), and an expert's mere recitation of facts, detached from accompanying analysis, is improper under Rule 701. *See, e.g.*, *Amgen Inc. v. Sanofi*, No. CV 14-1317-RGA, 2019 WL 11071409, at *3 (D. Del. Feb. 14, 2019). The Court also finds that some of Hollon's opinions are obvious and thus not helpful to the trier of fact, including that 700Credit had inconsistent information about Oatway because "dead persons do not apply for credit or make payments on loans." Dkt No. 79-9 at 22; *see also Knorr v. Daisy Mt. Fire Dist.*, No. CV-22-00608-PHX-DWL, 2024 WL 4227693, at *4 (D. Ariz. Sept. 18, 2024) (explaining that "permissible bases for seeking exclusion under Rule 702" include that the expert's opinions "relate to obvious, undisputed issues that do not require expertise").

Hollon also fails to explain how he reached his conclusions. He opines that 700Credit does not require the "'Manual Verification' section" of the report to be completed, so it "failed to ensure Mr. Oatway's information was verified as being input correctly before releasing a report." Dkt. No. 79-9 at 23. Hollon does not explain what 700Credit should have done—or required its customers (the furnishers of the information) to do—or whether its process deviated from industry standards. He does observe that "the reliability and trustworthiness of the originating CRA [is] a factor in determining the reasonableness of [a] reseller's procedures," *id.* at 44–45 (quoting *Grant v. RentGrow, Inc.*, No. SA-21-CV-1172-JKP, 2023 WL 5813140, at *22 (W.D. Tex. Sept. 6, 2023)), but he fails to address altogether the reliability or trustworthiness of the sources from whom 700Credit obtained its resold information (e.g., Experian and the Social Security Administration). Instead, Hollon pronounces in conclusory fashion that 700Credit's practice of transmitting information it received from "various sources" "failed to assure maximum possible accuracy." *Id.*

at 45. Hollon's failure to address a key factor he identified for determining whether a reseller has complied with Section 1681e(b) undercuts both the methodology he used to reach his conclusion as well as the reliability of the conclusion itself. *See Nelson v. Experian Info. Sols., Inc.*, No. CV 2:23-1634-RMG, 2024 WL 3219180, at *2 (D.S.C. June 27, 2024) (excluding a portion of another report by Hollon for similar reasons); *Dasho v. City of Fed. Way*, 101 F. Supp. 3d 1025, 1033 (W.D. Wash. 2015) (excluding expert opinion where expert "perform[ed] a substantial analytical leap in creating [his o]pinions," thus failing to show that he reliably applied his methods to the facts); *Pooshs v. Phillip Morris USA, Inc.*, 287 F.R.D. 543, 547 (N.D. Cal. 2012) ("[A] court may exclude expert testimony on the ground that an expert's purported methodology fails to explain his final conclusion."). Along the same lines, despite embracing *Grant*'s pronouncement that the reasonableness of a reseller's procedures depends at least in part on the trustworthiness of the originating CRA, Hollon insists that 700Credit should have followed CFPB guidance regarding inconsistencies from trade lines without addressing whether or how that guidance applies to resellers who do not directly obtain information from trade lines. Dkt. No. 79-9 at 39. "[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997)).

In addition, Hollon opines that 700Credit did not conduct a reasonable investigation when Oatway complained, but again, he does not explain his methodology or his conclusory opinion. Dkt. No. 79-9 at 27. Nor does he connect that opinion to his recitation of various dispute processes or the steps for a typical consumer dispute. *Id.* at 9–12. Accordingly, the Court excludes these opinions.

Last, Hollon opines to some limited degree on the harm Oatway suffered and the harm consumers typically suffer as a result of inaccuracies on consumer reports. *Id.* at 45–46. Oatway

can speak to his own damages, and Hollon's recitation of his damages is unhelpful (especially considering that Hollon is not qualified to opine on Oatway's emotional distress, *see id.* at 35, 65), so the Court excludes this portion of Hollon's damages opinion. *See Nelson*, 2024 WL 3219180, at *3 (excluding similar damages testimony for the same reason). The Court finds, however, that Hollon is qualified to speak, in general terms and as found relevant at trial, about the sort of damages that are typically caused by errors on consumer reports. *See id.*

For these reasons, the Court excludes Hollon's opinion in part.

**C.      The Court Grants in Part the Motions for Summary Judgment**

1. <u>Legal Standard</u>

Summary judgment is appropriate only when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court does not make credibility determinations or weigh the evidence at this stage. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The sole inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52.

When parties file simultaneous cross-motions for summary judgment on the same claim, the Court "must consider the appropriate evidentiary material identified and submitted in support of both motions, and in opposition to both motions, before ruling on each of them." *Fair Hous. Council of Riverside Cnty., Inc. v. Riverside Two*, 249 F.3d 1132, 1134 (9th Cir. 2001); *see also Tulalip Tribes of Wash. v. Washington*, 783 F.3d 1151, 1156 (9th Cir. 2015) (the district court "rule[s] on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard." (citation modified)). The Court "giv[es] the nonmoving party in each instance the benefit of all reasonable inferences." *ACLU of Nev. v. City of Las Vegas*, 333 F.3d 1092, 1097 (9th Cir. 2003). However, to the extent

1  the Court resolves factual issues in favor of the nonmoving party, this is true "only in the sense

2  that, where the facts specifically averred by that party contradict facts specifically averred by the

3  movant, the motion must be denied." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990).

4        To establish that a fact cannot be genuinely disputed, the movant can either cite the record

5  or show "that the materials cited do not establish the . . . presence of a genuine dispute, or that an

6  adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B).

7  Once the movant has made such a showing, "the nonmoving party must come forward with specific

8  facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith*

9  *Radio Corp.*, 475 U.S. 574, 587 (1986) (citation modified). Metaphysical doubt is insufficient, *id.*

10  at 586, as are conclusory, non-specific allegations, *Lujan*, 497 U.S. at 888–89. Nor is it the Court's

11  job to "scour the record in search of a genuine issue of triable fact"; rather, the nonmoving party

12  must "identify with reasonable particularity the evidence that precludes summary judgment."

13  *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (quoting *Richards v. Combined Ins. Co.*, 55

14  F.3d 247, 251 (7th Cir. 1995)). The Court will enter summary judgment "against a party who fails

15  to make a showing sufficient to establish the existence of an element essential to that party's case,

16  and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S.

17  317, 322 (1986).

18      2.  <u>Section 1681e(b) Claim</u>

19        Section 1681e(b) provides that "[w]henever a consumer reporting agency prepares a

20  consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the

21  information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b). In

22  lawsuits under this section, a consumer must first make a "prima facie showing of inaccuracy in

23  the agency's reporting." *Gross v. CitiMortgage, Inc.*, 33 F.4th 1246, 1251 (9th Cir. 2022) (citation

24  modified). If there is an inaccuracy, "the plaintiff must establish that the investigation was

unreasonable." *Id.* In addition, a consumer must show that he suffered injury that "was caused by the inclusion of the inaccurate entry.'" *Breitenbach*, 2025 WL 1655317, at *2 (quoting *Bibbs v. Trans Union LLC*, 43 F.4th 331, 342 (3d Cir. 2022)). Establishing a willful violation requires a plaintiff to make an "additional showing that the defendant acted knowingly or with reckless disregard of the statute's terms." *Bibbs*, 43 F.4th at 342 n.16. Oatway alleges that 700Credit's violation was both negligent and willful. *See* Dkt. No. 59 at 21; Dkt. No. 79 at 2.

(a) *There is an Issue of Fact Regarding Whether the Red Flag Report Was Inaccurate or Misleading*

700Credit argues that Oatway cannot show that 700Credit published an inaccurate consumer report stating that he was "deceased" because the Red Flag Report did not so state. Dkt. No. 82 at 16. According to 700Credit, "[t]he Red Flag Summary identified a potential red flag with that information, by flagging that the input SSN that 700Credit received did not belong to Oatway." *Id.* Oatway responds that the report was inaccurate because it "could be interpreted by a reasonable reader to imply Plaintiff was deceased or a fraudster[.]" Dkt. No. 79 at 16–17; *see also* Dkt. No. 93 at 16–17.

Under the FCRA, "a credit entry can be incomplete or inaccurate within the meaning of the FCRA because it is patently incorrect, or because it is misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions." *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1163 (9th Cir. 2009) (citation modified). Even when information is "technically accurate," it is inaccurate under the FCRA when the information is presented in a way that creates a misleading impression to the reader. *Id.* The Court applies an "objective standard," examining how a reasonable reader would understand the report. *Breitenbach*, 2025 WL 1655317, at *3.

Here, there is a dispute of material fact regarding the source of the inaccuracy. The parties

agree that at some point, an inaccurate social security number was entered. No party suggests that Experian is at fault for this error. Oatway has submitted evidence supporting that Definitive Motors entered the social security number correctly, and the source of the error was therefore 700Credit. Dkt. No. 63-3 at 26–27 (Quinones testifying that the information entered into CUDL was accurate, as reflected in the data sent to SELCO Community Credit Union); Dkt. No. 79-3 (SELCO Community Credit Union application containing the correct social security number).[7] 700Credit has submitted evidence supporting that Definitive Motors entered the social security number incorrectly, and the source of the error was therefore *not* 700Credit. Dkt. No. 87 at 119, 153–56 (700Credit's Managing Director testifying that 700Credit received the incorrect social security number from CUDL). The Court does not weigh the evidence at this stage. *Liberty Lobby*, 477 U.S. at 255. If 700Credit was the cause of the error—whether through a glitch in its system or otherwise—a reasonable juror could conclude that its Red Flag Report was patently incorrect and/or misleading because it returned a social security number that was never associated with Oatway, complete with red flags that should not have been tied to Oatway based on the data submitted to 700Credit. If 700 Credit was not the cause of the error, a reasonable juror could conclude that its Red Flag Report was not incorrect or misleading because it accurately reported that the person associated with the social security number submitted by Definitive Motors was deceased. Accordingly, neither party is entitled to summary judgment on this issue.

### (b) There Is an Issue of Fact Regarding Whether 700Credit Failed to Follow Reasonable Procedures to Assure Maximum Possible Accuracy

As noted above, "[w]henever a consumer reporting agency prepares a consumer report it

---

[7] Oatway also suggests that 700Credit was at fault because Definitive Motors had to click "View Detail Report" through the CUDL system to see the full report, and Definitive Motors' employees did not know what that button was. Dkt. No. 79 at 6. However, Oatway has not shown that this was a deficiency in what 700Credit *communicated* to dealerships, 15 USC § 1681a(d)(1), as opposed to a potential flaw in the CUDL system or in Definitive Motors' process.

ORDER GRANTING IN PART MOTIONS FOR SUMMARY JUDGMENT AND MOTION TO EXCLUDE; GRANTING MOTION TO SEAL - 25

1   shall follow reasonable procedures to assure maximum possible accuracy of the information

2   concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b). However, "[t]he

3   FCRA does not impose strict liability[.]" *Guimond*, 45 F.3d at 1333. Consequently, "an agency

4   can escape liability if it establishes that an inaccurate report was generated despite the agency's

5   following reasonable procedures." *Id.* "The reasonableness of the procedures and whether the

6   agency followed them will be jury questions in the overwhelming majority of cases." *Id.*; *Gross*,

7   33 F.4th at 1252 (same); *see also Cairns v. GMAC Mortg. Corp.*, No. CIV 04-1840-PHX-SMM,

8   2007 WL 735564, at *4 (D. Ariz. Mar. 5, 2007) (same).

9       700Credit argues that its actions were reasonable as a matter of law because it followed the

10  FTC's guidance on the Red Flags Rule. Dkt. No. 82 at 19–21. It notes that this guidance provides

11  the following as examples of "[p]ersonal identifying information that indicate identity theft":

12      • inconsistencies with what you know – for example, an address that doesn't
          match the credit report or the use of a Social Security number that's listed on
13        the Social Security Administration Death Master File[.]

14      • inconsistencies in the information a customer has submitted to you[.]

15  *Id.* at 4 (quoting Fed. Trade Comm'n, *Fighting Identity Theft with the Red Flags Rule: A How-To*

16  *Guide for Business* (2013), https://www.ftc.gov/business-guidance/resources/fighting-identity-

17  theft-red-flags-rule-how-guide-business#who) (emphasis omitted). 700Credit contends that—

18  consistent with the guidance—it "identified a mismatch between the SSN provided, and the

19  consumer whose identity was being verified." Dkt. No. 82 at 20. Oatway disagrees that 700Credit

20  acted reasonably, contending that 700Credit "concedes that it lacks policies and procedures (much

21  less reasonable ones) to assure maximum possible accuracy of consumer information." Dkt. No.

22  79 at 19.[8] As set forth above, there is an issue of fact about why 700Credit used the x1234 SSN.

23

24

---

[8] Oatway supports this with Hollon's opinions, arguing that 700Credit sells reports it receives from Experian and

ORDER GRANTING IN PART MOTIONS FOR SUMMARY JUDGMENT AND MOTION TO EXCLUDE;
GRANTING MOTION TO SEAL - 26

If the erroneous social security number was submitted by Definitive Motors, Dkt. No. 87 at 119, 153–56, it could have been reasonable for 700Credit to report the red flags associated with that SSN. *Cf. Gross*, 33 F.4th at 1253 (noting that entities that furnish information to CRAs will often have "more extensive and more thorough" investigatory obligations than CRAs, who are "third parties that lack any direct relationship with the consumer, so they must rely on the representations of the furnishers") (citation modified).

Oatway also argues that 700Credit should have further investigated the information it received from Experian because 700Credit had contradictory information in its possession—including that Oatway was making payments "on 35 total accounts and provided proof of his identity in person at the dealership." Dkt. No. 93 at 24. Although this information confirmed that Oatway was alive, it did not rule out that he was using a deceased person's SSN. The Court therefore cannot conclude as a matter of law that 700Credit failed to use reasonable procedures to ensure accuracy.

For its part, 700Credit's references to the requirements of the red flag law show that red flags should be reported, but not necessarily that 700Credit employed reasonable *procedures* to assure maximum possible accuracy. *See* Dkt. No. 82 at 19–20. For example, if 700Credit caused an incorrect social security number to replace the accurate one submitted by Definitive Motors, a reasonable juror could conclude that its failure to maintain quality control measures that would have avoided such an egregious error constituted a violation of Section 1681e(b).

Accordingly, neither party is entitled to summary judgment on this issue.

---

others without verifying the truth of their contents, and it did not have its own policies and procedures in place to review those reports for accuracy before sending them to third parties. *Id.* at 20–21. As set forth above, the Court excludes Hollon's opinions on these issues because they do no more than restate the factual record and are therefore not helpful to the trier of fact. Moreover, Hollon does not support his conclusion that reasonable procedures would have avoided the potential inaccuracy with any specifics, methodology, or reference to industry standards. *Id.* at 21 (citing Dkt. No. 79-9 at 6).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

     (c)  *There is an Issue of Fact Regarding Whether Oatway Suffered Injury Caused by 700 Credit*

A CRA that negligently violates any duty imposed by the FCRA is liable for "actual damages," costs, and attorney's fees. 15 U.S.C. §1681o. If a CRA willfully violates the FCRA, punitive damages may also be awarded. *Id.* §1681n.

700Credit argues that it is entitled to summary judgment because its actions caused Oatway no actual damages. It contends that his damages were caused solely by the denial of credit, and the lenders denied him credit because his debt-to-income ratio was too high. Dkt. No. 82 at 17–18.

Oatway's amended complaint avers that he "suffered damage by loss of credit" and "Definitive Motors denied Plaintiff's loan application based upon the contents of Defendant 700 Credit's consumer report it sold about Plaintiff." Dkt. No. 59 at 13, 19, 21. However, as set forth above, Definitive Motors does not extend credit to its customers. Dkt. No. 63-3 at 83. Nor did it deny Oatway credit or deny his loan application. *Id.* The lenders did so based on an issue unrelated to the Red Flag Report. *See, e.g., id.* at 59. Accordingly, 700Credit is entitled to summary judgment on Oatway's contentions that he suffered damages because the Red Flag Report resulted in denial of his loan application or caused him damage by loss of credit.

That said, 700Credit is not entitled to summary judgment on its claim that Oatway suffered no damages. Oatway's damages claim is not limited to denial of credit; he also claims that due to 700Credit's "conduct, action, and inaction," he suffered "loss of the ability to purchase a car on 07/31/23"; and "loss of the specific used Tesla [he] wanted to purchase[.]" Dkt. No. 59 at 19, 21. And contrary to 700Credit's position, it is not immune from a Section 1681e(b) claim simply because its reporting did not lead to a denial of credit. Rather, "a failure to comply with § 1681e(b) is actionable even absent a denial of credit." *Guimond*, 45 F.3d at 1333 (holding that "the district court erred in finding that any liability under § 1681e(b) was predicated, as a matter of law, on the

occurrence of some event—denial of credit or transmission of the report to third parties—resulting from the compilation and retention of erroneous information."). Oatway adduces evidence that Definitive Motors was working with him to secure a loan, but that process stopped due to the Red Flag Report, and Definitive Motors would not release a vehicle to him after that point—regardless of whether Oatway could ultimately obtain financing—because of the potential for fraud. Dkt. No. 63-3 at 61–62; Dkt. No. 87 at 332–33 (same). Specifically, Quinones testified that he was working with Oatway and various lenders to structure a successful deal, but the Red Flag Report put a halt to that ongoing process. Dkt. No. 87 at 332 ("I put a pause on everything, because now it's a liability for the dealership."). Quinones specified that once he received the Red Flag Report, he could not release the car even if Oatway had been approved for a loan. *Id.* at 332–33.[9] Oatway contends that the resulting delay in his ability to purchase a car caused him to pay a higher interest rate for the vehicle he later obtained. Dkt. No. 24-1 at 1. He also spent time communicating with 700Credit, the dealership, Experian, and the Social Security Administration in an attempt to correct the error. Dkt. No. 79-1 at 115–16.

In addition to these tangible harms, Oatway also contends that he suffered emotional distress. Specifically, he avers that 700Credit's actions exacerbated his anxiety and depression symptoms, negatively affected his job performance and personal relationships, and resulted in difficulty sleeping, irritability, and frequent headaches. Dkt. No. 79-1 at 113–14, 169–70. Emotional distress damages are "actual damages" in the FCRA context. *Dennis v. BEH-1, LLC*, 520 F.3d 1066, 1069 (9th Cir. 2008).

---

[9] 700Credit points to Quinones' seemingly contradictory testimony later in his deposition indicating that he may have released a car to Oatway if a lender had approved a loan, Dkt. No. 82 at 18 (citing Dkt. No. 87 at 351–54 (Quinones testifying that if a lender had approved a loan, he would have contacted the owner of the dealership and "let him make the decision on how he wanted to [proceed]")), but again, the Court does not weigh testimony or assess credibility at this stage.

For these reasons, 700Credit is not entitled to summary judgment based on its argument that it caused Oatway no damages. At the same time, because a reasonable juror could conclude that 700Credit did not cause Oatway's damages if it was not to blame for entry of the incorrect social security number, Oatway is not entitled to summary judgment on this issue either.

3.  Section 1681i Claim

Oatway contends that 700Credit violated Section 1681i by failing to conduct a reasonable reinvestigation after he complained. Dkt. No. 59 at 19–21. That contention implicates several sections of the statute.

Section 1681i(a)(1)(A) states:

> Subject to subsection (f) and except as provided in subsection (g), if the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer and the consumer notifies the agency directly, or indirectly through a reseller, of such dispute, the agency shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file in accordance with paragraph (5), before the end of the 30-day period beginning on the date on which the agency receives the notice of the dispute from the consumer or reseller.

A "reseller" is exempt from the general reinvestigation requirement of Section 1681i(a)(1)(A). *See* § 1681i(f). A "reseller" is a CRA that:

> (1) assembles and merges information contained in the database of another consumer reporting agency or multiple consumer reporting agencies concerning any consumer for purposes of furnishing such information to any third party, to the extent of such activities; and
>
> (2) does not maintain a database of the assembled or merged information from which new consumer reports are produced.

§ 1681i(a)(u). Resellers are subject to their own requirements under Section 1681i(f)(2):

> If a reseller receives a notice from a consumer of a dispute concerning the completeness or accuracy of any item of information contained in a consumer report on such consumer produced by the reseller, the reseller shall, within 5 business days of receiving the notice, and free of charge—
>
> (A) determine whether the item of information is incomplete or inaccurate as a

result of an act or omission of the reseller; and

(B) if—

>> (i) the reseller determines that the item of information is incomplete or inaccurate as a result of an act or omission of the reseller, not later than 20 days after receiving the notice, correct the information in the consumer report or delete it; or

>> (ii) if the reseller determines that the item of information is not incomplete or inaccurate as a result of an act or omission of the reseller, convey the notice of the dispute, together with all relevant information provided by the consumer, to each consumer reporting agency that provided the reseller with the information that is the subject of the dispute, using an address or a notification mechanism specified by the consumer reporting agency for such notices.

To establish a violation of Section 1681i(a), a plaintiff must demonstrate that: (1) the plaintiff's credit files contains inaccurate or incomplete information; (2) the plaintiff notified the CRA directly of the inaccurate or incomplete information; (3) the dispute is not frivolous or irrelevant; (4) the CRA failed to respond to plaintiff's dispute; and (5) this failure to reinvestigate caused the plaintiff to suffer actual damages. *Thomas v. TransUnion, LLC*, 197 F. Supp. 2d 1233, 1236 (D. Or. 2002). "Actual damages may include damages for humiliation, mental distress, and injury to reputation and credit worthiness, even if the plaintiff has suffered no out-of-pocket losses." *Id.*

Oatway asserts that 700Credit violated Section 1681i(a) "by failing to conduct a reasonable reinvestigation to determine whether the disputed information was inaccurate and record the current status of the disputed information, or delete the disputed information . . . and by failing to maintain reasonable procedures with which to filter and verify disputed information in Plaintiff's credit file." Dkt. No. 59 at 20. Oatway contends that even if 700Credit argues that it is a "reseller," and thus exempt from the requirements of subsection (a), it is still liable under subsection (f) for "failing to correct or delete the inaccurate information" or "convey[ing] the notice of the dispute" to Experian. *Id.* at 20–21. He asserts that 700Credit "failed to conduct a reasonable investigation,

1    or any investigation whatsoever," so he is entitled to summary judgment because "there is no

2    disputed issue of fact regarding 700 Credit's failure to conduct a reasonable reinvestigation under

3    § 1681i." Dkt. No. 79 at 30 (emphasis omitted); *see also* Dkt. No. 93 at 26.

4        700Credit responds that "Oatway cannot show that 700Credit failed to conduct a

5    reasonable reinvestigation of the alleged report because the report would never have been used

6    again for any purpose." Dkt. No. 82 at 22 ("The Red Flag Summary is always a one-off report put

7    together by 700Credit for the sole and exclusive purpose of assisting a car dealership of [sic]

8    verifying whether the personal identifying information immediately before it and purportedly

9    collected from an applicant matches that applicant."). Moreover, its Rule 30(b)(6) witness testified

10   that 700Credit does not "retain information" about consumers; it obtains information from its

11   customers and "provide[s] it to the credit bureaus[.]" Dkt. No. 87 at 113. 700Credit avers that as a

12   result, it "does not maintain its own consumer files that 700Credit could have reinvestigated," Dkt.

13   No. 82 at 22; Dkt. No. 94 at 7, nor was there an inaccuracy to reinvestigate with Experian because

14   Oatway told 700Credit that Experian was not reporting him as dead, Dkt. No. 82 at 22; *see also*

15   Dkt. No. 79-1 at 129–33.

16       Regardless of whether 700Credit was acting as a CRA, a reseller, or both, neither party is

17   entitled to summary judgment on Oatway's Section 1681i claim because as set forth above, there

18   is an issue of fact about whether Oatway's consumer report was inaccurate or misleading. *See*

19   *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 890 (9th Cir. 2010) (a plaintiff must make a

20   "prima facie showing of inaccurate reporting"). "[A] consumer who brings a § 1681i failure to

21   reinvestigate claim must first show that his 'credit file contains inaccurate or incomplete

22   information.'" *Hinton v. Trans Union LLC*, 654 F. Supp. 2d 440, 451 (E.D. Va. 2009) (quoting

23   *Thomas*, 197 F. Supp. 2d 1233, 1236 (D. Or. 2002)), *aff'd*, 382 F. App'x 256 (4th Cir. 2010).

24

1    Neither party is entitled to summary judgment regarding causation or damages either.

2    Again, there is a material issue of fact regarding who or what entity caused the SSN error and thus

3    caused Oatway's damages. *See, e.g.*, *Taylor v. First Advantage Background Servs. Corp.*, 207 F.

4    Supp. 3d 1095, 1107 (N.D. Cal. 2016) (reserving the issues of causation and damages for the jury).

5    In addition, the record is too underdeveloped for the Court to determine what damages Oatway

6    suffered as a result of the failure to reinvestigate. He cannot recover damages incurred by

7    700Credit's failure to reinvestigate under subsection (a) until after the 20- or 30-day

8    reinvestigation period expired, *see* 15 U.S.C. § 1681i(a)(1)(A) (for CRAs); *id.* § 1681i(f)(2)(B)(i)

9    (for resellers); *Peterson v. Am. Exp.*, No. CV-14-02056-PHX-GMS, 2016 WL 1158881, at *6 (D.

10    Ariz. Mar. 23, 2016), but it is not clear what damages Oatway suffered in that time frame, *see,*

11    *e.g.*, Dkt. No. 79-1 at 113–14, 169–70. Therefore, Oatway is not entitled to summary judgment

12    that he suffered damages as a result of 700Credit's failure to reinvestigate. And as set forth above,

13    700Credit is not entitled to summary judgment that he suffered no damages.

14    Nevertheless, Oatway is entitled to summary judgment on two aspects of this claim. First,

15    it is undisputed that he contacted 700Credit directly about the alleged inaccuracy. Dkt. No. 79-1

16    at 129–33; Dkt. No. 55-3 at 3. Second, it is undisputed that 700Credit did not respond to his

17    complaint. Dkt. No. 79-1 at 167–68; *see also* Dkt. No. 63-1 at 133, 161–62, 166, 168–69.

18    Therefore, Oatway is entitled to summary judgment on these aspects of his claim. *See, e.g.*, *Taylor*,

19    207 F. Supp. 3d at 1104 (finding that courts can grant partial summary judgment on elements of a

20    Section 1681i claim). Otherwise, the Court denies the parties' motions for summary judgment on

21    Oatway's Section 1681i claim.

22    Finally, although Oatway asserts that 700Credit willfully violated the FCRA, Dkt. No. 59

23    at 21, and makes a passing reference to that issue in his motion, Dkt. No. 79 at 2, neither party

24    meaningfully addresses the willfulness issue in their briefing. *See generally* Dkt. Nos. 79, 82, 93–

94. For that reason, and because the disputed issues above preclude summary judgment on this issue, the Court declines to grant summary judgment to either party on the issue of willfulness.

**D.    The Court Grants the Motion to Seal**

700Credit moves to seal exhibit 4 to the Declaration of Gwendolyn Payton in support of its motion for summary judgment. Dkt. No. 85 at 1; *see also* Dkt. No. 83-1 at 249–58 (sealed exhibit). Exhibit 4 is the contract between 700Credit and Experian, Dkt. No. 83 at 2, and 700Credit contends that it contains information that "references 700 Credit's relationship with Experian," which "constitute[s] confidential and proprietary information that should not be made public," Dkt. No. 85 at 1–2. Experian's counsel, in an email to 700Credit's counsel, requested that the contract be sealed because it "contains confidential, sensitive contractual and pricing terms with 700 Credit for Experian's PreciseID product." Dkt. No. 86-1 at 2. Oatway has not responded to the motion.

700Credit's motion fails to comply with Local Civil Rule 5(g)(3)(A), which requires that a party filing a motion to seal include a "certification that the party has met and conferred with all other parties in an attempt to reach agreement on the need to file the document under seal, to minimize the amount of material filed under seal, and to explore redaction and other alternatives to filing under seal[.]" Neither the motion nor the supporting declaration includes the required certification. *See generally* Dkt. Nos. 85–86. Nevertheless, the Court considers the motion because it contains Experian's confidential information, Dkt. No. 86-1, and that party should not be penalized for 700Credit's mistake. 700Credit is warned, however, that future violations of the Local Civil Rules may result in sanctions, and the Court may strike noncompliant filings.

Turning to the substance of the motion, Courts recognize a "general right to inspect and copy public records and documents, including judicial records and documents." *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006) (quoting *Nixon v. Warner Commc'ns,*

ORDER GRANTING IN PART MOTIONS FOR SUMMARY JUDGMENT AND MOTION TO EXCLUDE; GRANTING MOTION TO SEAL - 34

1  *Inc.*, 435 U.S. 589, 597 (1978)); *see also Oliner v. Kontrabecki*, 745 F.3d 1024, 1025 (9th Cir.

2  2014) ("Throughout our history, the open courtroom has been a fundamental feature of the

3  American judicial system."). Accordingly, when a district court considers a sealing request, it starts

4  with "a strong presumption in favor of access to court records." *Foltz v. State Farm Mut. Auto.*

5  *Ins. Co.*, 331 F.3d 1122, 1135 (9th Cir. 2003). A party seeking to seal court filings in connection

6  with a dispositive motion bears the burden of overcoming this presumption by providing

7  "'compelling reasons' sufficiently specific" for doing so. *Kamakana*, 447 F.3d at 1182; *see also*

8  *Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1096–97 (9th Cir. 2016).

9      The Court finds that compelling reasons exist to seal exhibit 4 because it contains

10  Experian's pricing information, the disclosure of which could be used unfairly by competitors to

11  harm its business interests. *See Nixon*, 435 U.S. at 598 (explaining that sealing may be justified to

12  prevent judicial documents from being used "as sources of business information that might harm

13  a litigant's competitive standing"); *Universal Life Church Monastery Storehouse v. Am. Marriage*

14  *Ministries*, No. C19-0301-RAJ, 2022 WL 971561, at *2 (W.D. Wash. Mar. 31, 2022) (finding that

15  compelling reasons existed to seal "documents contain[ing] confidential information regarding

16  [plaintiff's] business practices" because "disclosure could enable a competitor to gain an unfair

17  advantage in the marketplace"); *Cent. Freight Lines, Inc. v. Amazon Fulfillment Servs.*, No. C17-

18  0814-JLR, 2019 WL 3082302, at *3 (W.D. Wash. July 15, 2019) (granting motion to seal

19  unredacted expert report that contained "sensitive financial and pricing information"). There do

20  not appear to be any less restrictive options to sealing the document. Therefore, exhibit 4 may

21  remain under seal.

22                          **III.   CONCLUSION**

23      For the foregoing reasons, the Court GRANTS IN PART and DENIES IN PART both

24  motions for summary judgment, Dkt. Nos. 79, 82, GRANTS IN PART and DENIES IN PART

700Credit's Motion to Exclude Plaintiff's Expert, Dkt. No. 78, and GRANTS 700Credit's Motion to Seal, Dkt. No. 85.

Dated this 19th day of September, 2025.

Lauren King
United States District Judge